IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHEMCRAFT (PTY) LTD | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  4:25-CV-00766-O |
| | § | |
| CRAIG MCALPINE, ET AL., | § | |
| | § | |
| Defendants. | § | |

**OPINION & ORDER**

Before the Court are Defendant Frost Investment Services, LLC's Motion to Dismiss and Motion to Compel Arbitration and Brief in Support and Appendix in Support (ECF Nos. 26, 13); Defendants Frost Bank and Frost Brokerage Services, Inc.'s Motion to Dismiss and Motion to Compel Arbitration and Brief in Support (ECF No. 27); Defendant Urbin McKeever's Motion to Dismiss in Favor of Binding Arbitration, Brief and Appendix in Support (ECF Nos. 28, 29, 16); and Plaintiff's Combined Response and Appendix in Support (ECF Nos. 33, 34); and the various Frost Defendants' Replies (ECF Nos. 38, 39); Defendants Craig McAlpine, Katrina McAlpine, David McAlpine, and Sturdi Forest, L.P.'s ("Sturdi Defendants") Motion to Dismiss or Stay Due to Parallel State Court Proceeding and Brief and Appendix in Support (ECF Nos. 31, 19); Plaintiff's Response (ECF No. 35); and Defendants' Reply (ECF No. 41); Sturdi Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 32); Plaintiff's Response (ECF No. 40); and Defendants' Reply (ECF No. 45); Sturdi Defendants' Motion for Sanctions (ECF No. 44); Plaintiff's Response and Appendix in Support (ECF Nos. 46, 47); and Defendants' Reply (ECF No. 48). Having considered the Motions, briefing, and applicable law the Court **GRANTS** the Frost Defendants' and McKeever's Motions to Compel Arbitration; **DENIES** Sturdi Defendants'

Motion to Dismiss or Stay Due to Parallel State Court Proceeding; **GRANTS in part** Sturdi Defendants' Motion to Dismiss for Failure to State a Claim; and **DENIES** Sturdi Defendants' Motion for Sanctions.[1]

## I.    BACKGROUND[2]

### A. Factual Background

Chemcraft (Pty) Ltd. ("Plaintiff" or "Chemcraft") is a privately owned South African packaging and manufacturing company that was founded by Gilroy McAlpine ("Gilroy"). In its First Amended Complaint ("the Complaint"), Chemcraft alleges that Craig McAlpine ("Craig"), Katrina McAlpine, David McAlpine, and Sturdi Forest, L.P. (the "Sturdi Defendants") embezzled millions of dollars from a commercial brokerage account owned by Sturdi Packaging, Inc. ("Sturdi I").

On February 28, 1995, Gilroy conveyed Chemcraft to the Gilroy McAlpine Family Trust. In 2006, Gilroy expanded Chemcraft's South African operations to the United States and applied for approval from the South African Reserve Bank ("SARB") to participate in foreign direct investment on December 20, 2006.

On or about March 1, 2007, subject to the SARB's approval, Chemcraft incorporated its offshore subsidiary, Sturdi Packaging, Inc. ("Sturdi I"), in the State of Florida. Chemcraft purchased 3,500,000 shares in Sturdi I—100% of the shares—for their par value of $3,500,000.00. Chemcraft also loaned Sturdi I approximately $5,200,000.00 in addition to its initial investment.

In 2008, Sturdi I registered to transact business in Texas. Around this time, Sturdi I opened a commercial bank account with Defendant Frost Bank that is governed by a deposit account

---

[1] The Motions at ECF Nos. 11, 12, 14, 17 are DENIED as moot.
[2] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Amended Complaint. *See* ECF No. 22. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

agreement ("DAA") containing an arbitration clause.[3] By its terms, the DAA's arbitration provision applies to disputes with "third parties" and "affiliates" of Frost Bank.[4] Both Craig— Gilroy's nephew—as President of Sturdi, and Gilroy, as Agent, signed the signature card for the commercial account.

On June 11, 2015, Sturdi I submitted a brokerage account (the "Brokerage Account") application ("Application") to Frost Brokerage Services, Inc. ("Frost Brokerage") (with Frost Bank, Frost Investment Services, LLC, and Urbin McKeever, the "Frost Defendants" or "Frost"). The application listed two authorized individuals: Craig employed by Sturdi I for sales, and Gilroy, the owner. The Application identified Craig as an "authorized individual."[5] Plaintiff alleges that Gilroy only chose to appoint Craig as an authorized individual on the Application because Craig was a U.S. resident, and Gilroy was not. As part of the Application, Craig and Gilroy acknowledged that the brokerage account—like the commercial account (collectively, the "Accounts")—was governed by a customer agreement (the "BAA") containing an arbitration clause.[6] Gilroy was a Chemcraft director at the time he signed and acknowledged that the commercial and brokerage Accounts were governed by the DAA and BAA, respectively.

In 2015, Sturdi I instructed the Frost Defendants to limit Craig's access to the Brokerage Account to "view only" and to prevent him from "equity trading & option trading" access.[7] This remained the status quo until Gilroy's death on April 12, 2021. Prior to his passing, Gilroy had attempted to remove Craig's access entirely from the Brokerage Account. Bernard H. Herbert ("Herbert") was the executor of Gilroy's estate. On or around July 15, 2020, Chemcraft contacted

---

[3] Frost's Appx. Supp. Mot. Compel Arbitration App. 12–13, ECF No. 13.
[4] *Id.* (DAA) App. 15.
[5] Am. Compl. ¶ 4, ECF No. 22.
[6] Frost's Appx. Supp. Mot. Compel Arbitration (BAA) App. 76, ECF No. 13.
[7] Am. Compl. ¶ 43, ECF No. 22.

the Frost Defendants with this purpose in mind, and to replace Craig, appointed Herbert as a third-party agent to monitor Gilroy's accounts.

Two weeks after Gilroy's passing, Craig appointed his wife Katrina as a signatory with the authority over the Brokerage Account. Plaintiff alleges that on April 26, 2021, Craig provided a Beneficial Ownership Form that fraudulently claimed that he was the rightful owner of the Brokerage Account. Craig also produced a Corporate and Unincorporated Organization Resolution, which had been kept by the Frost Defendants, containing unauthorized Sturdi I meeting minutes purporting to authorize a transfer of 5,200,000 unissued shares in Sturdi I to Craig and Katrina. Plaintiff asserts that by February 2023 Frost aided in concealing the Sturdi Defendants' embezzlement of $9,950,000 from Sturdi I's Brokerage Account. Around the same time, Craig converted Sturdi I into a Texas Limited Partnership, called Sturdi Forest, L.P. ("Sturdi II"). Faced with competing claims of ownership between Craig and Plaintiff, Frost froze the Accounts until ownership of the assets could be determined.

### B. Procedural History

Sturdi II, as successor in interest to Sturdi I, sued Plaintiff in Texas state court and named Frost as a defendant, *in rem* only, in the case styled *Sturdi Packaging, Inc. v. Chemcraft (PTY) Ltd.*, No. 096-340969-23, in the 96th District Court, Tarrant County, Texas (the "State Court Proceedings"). Plaintiff Chemcraft counterclaimed against Sturdi II and named Craig as a third-party defendant. *See Frost Bank v. Sturdi Packaging, Inc.*, No. 02-23-00383-CV, 2025 WL 728105, at *3 (Tex. App.—Fort Worth Mar. 6, 2025, pet. denied). Sturdi II and Plaintiff asserted tort claims against each other and sought declaratory relief regarding ownership of Sturdi II and control of the Accounts. *Id.*

Eventually Chemcraft, Sturdi II, and Craig settled. *Id.* As part of the settlement, Chemcraft released its claims asserting ownership of Sturdi II and the Accounts. *Id.* In accordance with their settlement, the state court directed Frost to disburse funds from the brokerage account to Chemcraft, which Frost did. *Id.* The state court also signed an agreed order dismissing Chemcraft's claims against Sturdi II with prejudice. *Id.* at *4.

After the settlement Frost anticipatorily moved to compel arbitration, and subject thereto, asserted a declaratory judgment claim against Sturdi II and Chemcraft seeking an order that it had properly restricted the Accounts. *Frost Bank*, 2025 WL 728105, at *4. Sturdi II subsequently asserted tort and contract claims against Frost. Both Sturdi and Chemcraft opposed Frost's motion to compel arbitration, including by arguing that Chemcraft was not a signatory to the BAA or DAA and not subject to their arbitration provisions. *Id.* Frost insisted "that Chemcraft could be compelled to arbitrate based on direct-benefits estoppel." *Id.* The trial court denied Frost's motion. *Id.*

After Frost filed its notice of interlocutory appeal, Chemcraft filed an amended petition asserting claims against Frost Bank and Frost Brokerage and added additional defendants, including Frost Investment. Chemcraft's new claims against Frost are essentially the same claims now asserted here.[8] The trial court subsequently signed an order staying the state court lawsuit, including Chemcraft's new claims, pending interlocutory appeal. *Frost Bank*, 2025 WL 728105, at *4, n.8.

The Texas Second Court of Appeals reversed and remanded the trial court's order in March 2025. *Id.* at *11. It concluded that "the arbitration provision at issue covers all of these claims and parties," including Chemcraft via direct-benefits estoppel. *See id.* at *1, *9–11. The court of

---

[8] Frost's Appx. Supp. Mot. Compel Arbitration App. 279–87, ECF No. 13.

appeals entered judgment accordingly.[9] Sturdi II, but not Chemcraft, petitioned the Texas Supreme Court for review, which was denied on June 20, 2025.[10] About a month later, on July 16, 2025, Chemcraft non-suited without prejudice all its affirmative claims pending in the state court case.[11] The next day, Chemcraft, in an apparent attempt to avoid the Judgment, filed its Complaint in this Court.[12] The Complaint contains substantially the same allegations and identical causes of action against Frost Investment, Frost Bank, and Frost Brokerage, in addition to claims against the other defendants, that Chemcraft dismissed one day earlier in the state court case.[13]

Frost now moves to compel arbitration of Plaintiff's claims in this case arguing that collateral estoppel applies. The Sturdi Defendants move to dismiss Plaintiff's claims on the basis of *Colorado River* abstention and under Rule 12(b)(6). *See generally Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800 (1976). The Motions have been briefed and are ripe for the Court's review.

## II.    LEGAL STANDARDS

### A.  Arbitration Standard

The Federal Arbitration Act ("FAA") establishes national policies "favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). In determining whether parties should be compelled to arbitrate a dispute, the court conducts a two-step inquiry. *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007) (per curiam) (citing *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)). The first question to decide is whether the parties have agreed

---

[9] *Id.* (the "Judgment") App. 127–28.
[10] *Id.* App. 132–38.
[11] Frost's Appx. Supp. Mot. Compel Arbitration App. 297–300, ECF No. 13.
[12] *See* Am. Compl., ECF No. 22.
[13] *Compare* Am. Compl., ECF No. 22 *with* Frost's Appx. Supp. Mot. Compel Arbitration App. 237–95, ECF No. 13.

to arbitrate. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). If they have, then the court engages in contract interpretation to answer the second question of whether a claim is covered by the arbitration agreement. *Id.*; *see also Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Techs., Inc. V. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citation omitted). In analyzing whether there is a valid agreement, courts apply state-law principles governing formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

If the Court determines that an agreement to arbitrate exists, "the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Hill*, 367 F.3d at 429. "[I]f the court finds that the parties agreed to arbitrate, it next determines whether any federal statute or policy renders the claims nonarbitrable." *Moran*, 239 F. App'x at 936 (citing *Bailey*, 364 F.3d at 264). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration . . .[] the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

**B. Abstention Standard**

The *Colorado River* abstention doctrine applies when parallel proceedings involving the same parties and same issues are pending in federal court and state court. *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir. 2006); *Republic Bank Dallas, Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987). The Fifth Circuit has recognized that "it may be that there need not be applied in every instance a mincing insistence on precise identity" of parties and issues in order to find that cases are parallel for purposes of the abstention doctrine. *McIntosh*, 828 F.2d at 1121.

"The Colorado River abstention doctrine is based on principles of federalism, comity, and conservation of judicial resources." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir.2000). A *Colorado River* abstention analysis begins with a heavy thumb on the scale in favor of exercising federal jurisdiction, and that presumption is overcome only by "exceptional circumstances." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006).

## C.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-68 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d

at 675. However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted).

### III.   ANALYSIS

#### A.  Frost's Motion to Compel Arbitration

Frost Defendants move to compel arbitration on Plaintiff's claims against Frost Investment's affiliates, Frost Bank, Frost Brokerage Services, and McKeever. Frost Defendants argue that the Second Court of Appeals' decision in *Frost Bank v. Sturdi Packaging* collaterally estops Plaintiff from relitigating the issue of arbitrability.[14] No. 02-23-00383-CV, 2025 WL 728105 (Tex. App.—Fort Worth Mar. 6, 2025, pet. denied). Plaintiff responds that the issues before the Second Court of Appeals "rendered no judgment on the issue of arbitrability of Chemcraft's claims against Frost."[15] Plaintiff also urges this Court to find that Plaintiff is not bound by the arbitration clauses under the doctrine of direct-benefits estoppel.[16] The Court agrees with Plaintiff in part. Though the Second Court of Appeals did not specifically determine that

---

[14] Frost Investment's Mot. Compel Arbitration 15–18, ECF No. 26.
[15] Pl.'s Resp. Mot. Compel Arbitration. 13, ECF No. 33.
[16] *Id.* at 20–25.

Plaintiff's claims against Frost were subject to arbitration, it did determine that Plaintiff was subject to the arbitration clause of the BAA. *See Frost Bank*, 2025 WL 728105, at *4 n.8, *11.

"An order of a state court compelling arbitration must be given full faith and credit by a federal court." *Wheeler v. Kidder Peabody & Co., Inc.*, 8 F.3d 21, 1993 WL 455869, at *2 (5th Cir. 1993) (not designated for publication). "To determine the preclusive effect of a state judgment in federal court, the full faith and credit statute requires courts to apply the law of the state that rendered the initial judgment." *Bodine v. First Co.*, No. 3:20-cv03116-G-BT, 2021 WL 2823447, at *3 (N.D. Tex. July 7, 2021). A prior adjudication has preclusive effect when: (1) the issue of fact or law sought to be litigated in the second action was fully and fairly litigated in the first action; (2) that issue of fact or law was essential to the judgment in the first action; and (3) the party against whom the doctrine is asserted was a party or was in privity with a party in the first action.[17] *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801–02 (Tex. 1994); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The test to determine sufficient finality for the application of collateral estoppel is "whether the conclusion in question is procedurally definite." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985); *see also Wheeler*, 1993 WL 455869, at *2.

The issue considered by the Second Court of Appeals was "whether direct-benefits estoppel requires Chemcraft to arbitrate its claims even though it did not sign the BAA." *Frost Bank*, 2025 WL 728105, at *10. Plaintiff argues that the basis for the Second Court of Appeals' decision rests on factual issues which are relevant only to the Frost Defendants' claims against it in the State Court Proceedings but not to the claims it has brought against Frost here, thus the issues are not identical.[18] But Plaintiff "simply attempts to pour new wine into old wine skins."

---

[17] It is undisputed that Plaintiff was a party to the State Court Proceedings and is a party here.
[18] Pl.'s Resp. Mot. Compel Arbitration 15–19, ECF No. 33.

*Proctor v. D.C.*, 74 F. Supp. 3d 436, 451 (D.D.C. 2014). All of Plaintiff's claims in this case arise out of the same underlying dispute that was litigated in the State Court Proceedings.

Collateral estoppel "bars successive litigation of an issue . . . , *even if the issue recurs in the context of a different claim.*" *Taylor*, 553 U.S. at 892 (2008) (internal citation and quotation marks omitted) (emphasis added). The Second Court of Appeals determined that Plaintiff subjected itself to the terms of the BAA. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) (holding that "a litigant who sues based on a contract subjects him or herself to the contract's terms"). Plaintiff has not pointed to anything to suggest that the Second Court of Appeals' ruling that Plaintiff is subject to the BAA's arbitration clause is not applicable here, even though new causes of action are alleged. *See Wheeler*, 1993 WL 455869, at *3 ("Collateral estoppel precludes relitigation of issues, not claims. The validity of the arbitration agreement has been fully litigated; new causes of action arising out of the same set of operative facts will also be precluded." (citing *Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex.1982); *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 362 (Tex. 1971))).

Therefore, the Second Court of Appeals' ruling that Plaintiff is subject to the arbitration clause of the BAA under the doctrine of direct-benefits estoppel "must be given full faith and credit." *Wheeler*, 1993 WL 455869, at *2. Because the Second Court of Appeals' ruling was a procedurally definite result, Plaintiff is collaterally estopped from relitigating whether it is subject to the BAA's arbitration clause. *See e.g., City of San Antonio v. Cortes*, 468 S.W.3d 580, 586–87 (Tex. App.—San Antonio 2015, pet. denied).

However, the Second Court of Appeals' decision was final only as to the BAA's arbitration clause and not the DAA's. In the State Court Proceedings, the parties stipulated that "Frost had elected to pursue arbitration solely under the BAA's arbitration clause" and the court "assume[d]—

without deciding—that the BAA's arbitration clause [was] the only relevant agreement" to its analysis. *Frost Bank*, 2025 WL 728105, at *5 n.9. The BAA only governs the brokerage account with Frost Brokerage and that agreement does not contain the same broad language extending the agreement to "third parties" and "affiliates" like the DAA contains.[19] Thus, the Second Court of Appeals' decision was not a procedurally definite result with respect to whether Plaintiff is subject to the arbitration clause of the DAA, and Plaintiff is not collaterally estopped from litigating that issue. Consequently, the Court must independently determine if Plaintiff is subject to the terms of the DAA.

The Court adopts the reasoning of the Second Court of Appeals and finds that Plaintiff is subject to the arbitration clause of the DAA. "[U]nder federal law, direct-benefits estoppel applies when the nonsignatory either (1) knowingly seeks and obtains direct benefits from the contract *or* (2) seeks to enforce the terms of the contract or asserts claims that must be determined by reference to that contract." *Fuller v. Healthcare Servs. Grp., Inc.*, No. 2:18-cv-032-D, 2019 WL 244487, at *3 (N.D. Tex. Jan. 17, 2019) (emphasis in original); *see also IMA, Inc. v. Columbia Hosp. Med. City at Dallas, Subsidiary L.P.*, 1 F.4th 385, 391 (5th Cir. 2021) ("Texas's application of direct benefits estoppel is consistent with federal law.").

The Second Court of Appeals' decision rested on the fact that Plaintiff "sought and obtained contract benefits through both its prelitigation conduct and its claims for relief [in state court]." *Frost Bank*, 2025 WL 728105, at *10. That remains true of Plaintiff's conduct regarding the DAA. Plaintiff originally pleaded in state court for a declaration that it was entitled to "complete and total access and control over all of [Sturdi's] assets, including but not limited to its

---

[19] Mot. Compel 8–9, ECF No. 26.

bank accounts at Frost Bank." *Id.* (alteration in original) It also sought a TRO freezing all of the Accounts. *Id.*

Furthermore, Plaintiff's claims against Frost in this case must be determined by reference to the DAA. Many of Plaintiff's claims turn on questions such as whether Frost acted properly in administering the accounts in question, to whom Frost owed duties with reference to those accounts, and whether Frost was entitled to rely on the directives of the authorized account representatives. All of these are questions that must be determined entirely with reference to the terms of the DAA. Accordingly, the Court finds that direct benefits estoppel applies to subject Plaintiff to the DAA's arbitration clause.

Having decided that Plaintiff is subject to the terms of a valid agreement to arbitrate, the Court must next determine whether "the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (stating that arbitration is proper where "there is a valid agreement to arbitrate" and, "the current dispute falls within the scope of a valid agreement"). Both the DAA and BAA contain broad language covering all controversies "concerning any subject matter"[20] or all disputes "ARISING OUT OF, OR RELATED IN ANY WAY TO YOUR ACCOUNT OR THIS AGREEMENT."[21] The DAA specifically applies to disputes with "third parties" and "affiliates" of Frost Bank.[22] Because Plaintiff's claims against Frost arise out of the accounts in question, they fall withing the scope of the DAA's and BAA's broad arbitration agreements. And the DAA's inclusion of "third parties" and Frost "affiliates" extends the scope of arbitrability to the claims against all Frost Defendants and McKeever as Frost's employee.

---

[20] Frost's Appx. Supp. Mot. Compel Arbitration (BAA) App. 95, ECF No. 13.
[21] *Id.* (DAA) App. 14.
[22] *Id.* (DAA) App. 15.

Accordingly, all of Plaintiff's claims against Frost Defendants are subject to the arbitration clauses of the BAA and DAA and Frost Defendants' Motions to Compel must be, and hereby are, **GRANTED**.

**B.  The Sturdi Defendants' Motion for Colorado River Abstention**

Sturdi Defendant's Move to dismiss this action under the *Colorado River* abstention doctrine. The *Colorado River* doctrine only applies when there are parallel proceedings pending in federal and state court. *McIntosh*, 828 F.2d at 1121. Plaintiff's response to the Sturdi Defendants' Motion for Abstention is to argue that the proceedings are not parallel because the State Court Proceeding was removed to federal court.[23] However, on December 17, 2025, Judge Pittman remanded the case to state court. *See Sturdi Forest, L.P. et al v. Chemcraft (PTY) LTD*, 4:25-cv-01207-P, ECF No. 38 (N.D. Tex. Dec. 17, 2025). Therefore, Plaintiff's response is no longer applicable. Nevertheless, the Court finds that the two proceedings at issue here are not parallel.

Suits are "parallel" if they "involv[e] the same parties and the same issues." *Id.* at 1121 (quoting *PPG Indus., Inc. v. Cont'l Oil Co.,* 478 F.2d 674, 682 (5th Cir.1973)). This case and the State Court Proceedings are not precisely parallel. The Sturdi Defendants primarily argue that the Court must abstain because the two suits are parallel. *Colorado River* rejects that assertion, holding that "the pendency of an action in the state court is no bar to proceedings concerning the same subject matter in the Federal court having jurisdiction." *Colo. River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

Although Bernard Herbert, individually, and as executor of the Estate of Gilroy McAlpine and as trustee of the Gilroy McAlpine Family Trust, is a party to the State Court Proceedings, he

---

[23] Pl.'s Resp. Mot. Abstention 4–5, ECF No. 35.

is not party in this case.[24] Similarly, Urbin McKeever is not a party in the State Court Proceedings but is in this case.[25] The issues are also arguably different. The issues pending before the state court regarding Studi Defendants and Plaintiff arise out of a dispute surrounding the settlement agreement.[26] In this case, Plaintiff's allegations involve RICO violations committed by the Sturdi Defendants and the Frost Defendants not currently before the state court.[27]

Accordingly, the Court concludes that the two suits are not parallel such that the *Colorado River* doctrine would apply. *See Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005) (finding that "[w]hile the two suits share some issues" the parties were not identical and the state action did not encompass all of the issues presented in federal court). Sturdi Defendants' Motion to Dismiss under the *Colorado River* doctrine is **DENIED**.

## C.  The Sturdi Defendants' 12(b)(6) Motion to Dismiss

Plaintiff brings claims against the Sturdi Defendants for violations of RICO, conversion, conspiracy to defraud, and accounting. Only Plaintiff's RICO claims arise under federal law. Sturdi Defendant's move to dismiss Plaintiff's RICO claims, *inter alia*, on statutory standing grounds. Accordingly, the Court addresses standing first.

A § 1962(c) RICO claim requires that a plaintiff allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.* (referring to 18 U.S.C. § 1964(c)). "The civil RICO statute itself does not impose much of a

---

[24] *See generally* Sturdi Defendant's Appx. Supp. Mot. Dismiss (Second Am. Pet.) App. 491–522, ECF No. 19-7.
[25] *See generally* Am. Compl., ECF No. 22.
[26] Sturdi Defendant's Appx. Supp. Mot. Dismiss (Second Am. Pet.) App. 516–18, ECF No. 19-7.
[27] *See* Am. Compl. (Count II) ¶¶ 110–14, ECF No. 22.

standing requirement upon plaintiffs in RICO actions: it merely provides that RICO plaintiffs must have been injured 'by reason of' a predicate act or acts which constitute a violation of RICO section 1962." *Whalen v. Carter*, 954 F.2d 1087, 1090 (5th Cir. 1992) (citing 18 U.S.C. § 1964(c)).

Where, as here, Plaintiff individually brings claims analogous to shareholder derivative claims, the Fifth Circuit has held that courts should apply a three-part test to determine whether a plaintiff satisfies general capacity requirements: "(1) whether the racketeering activity was directed against the corporation; (2) whether the alleged injury to the shareholders merely derived from, and thus was not distinct from, the injury to the corporation; and (3) whether state law provides that the sole cause of action accrues in the corporation." *Id.*; *accord Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010). "If each of these questions can be answered 'yes,' then the shareholders do not have the requisite standing." *Whalen*, 954 F.2d at 1091.

   1.   Whether the racketeering activity was directed against the corporation.

First, the Sturdi Defendants argue that the sole injury Plaintiff alleges is the embezzlement of money held in Sturdi I's Accounts and because Sturdi I is a distinct legal entity, Plaintiff has not alleged a direct injury to it.[28] In response, Plaintiff contends that Sturdi I was a wholly-owned, single-purpose entity, created only to serve as a conduit for Plaintiff's foreign investment.[29] Plaintiff further argues Sturdi Defendants drained Plaintiff's pockets directly because "such losses trace directly to [Plaintiff]'s transfer of its own funds to Sturdi I."[30]

Taking the facts alleged as true, Plaintiff's own complaint indicates that each act of racketeering was directed at Sturdi I, not Plaintiff.[31] Plaintiff attempts to collapse the corporate

---

[28] Sturdi Defs.' Mot. Dismiss 6–7, ECF No. 32.
[29] Pl.'s Resp. Sturdi Defs.' Mot. Dismiss 12, ECF No. 40.
[30] *Id.*
[31] *See e.g.*, Am. Compl. ¶¶ 11 ("Defendants' 'agenda' and ultimate goal was the misappropriation of Sturdi I's assets."), 68 ("The goal of this conspiracy and purpose of the McAlpine Enterprise was to . . . loot the [Sturdi I] Brokerage Account."), 76–79, 109, ECF No. 22.

separateness of Sturdi I and itself by arguing that Plaintiff only created Sturdi I because the SARB required Plaintiff to place its foreign investments into a U.S. entity and that Sturdi I funded the brokerage account with Plaintiff's money.[32] But the Court notes that Plaintiff does not cite a single authority in support of the proposition that the alleged embezzlement constitutes a direct injury to Plaintiff.[33] Rather, the weight of authority appears to contradict Plaintiff's position.

In *Cedric Kushner Promotions, Ltd. v. King* the Supreme Court, in deciding a civil RICO case, held that the "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." 533 U.S. 158, 163 (2001). The court further held that "even where the employee is the corporation's sole owner" the employee and the corporation are different "persons," because "incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges." *Id.*

The fact that Plaintiff is a corporation rather than a natural person does not seem to change the analysis in light of the well settled principle of corporate separateness. *See e.g., United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." (internal quotation marks omitted)); FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS, § 25 (2013) ("The fact that two or more corporations have the same shareholders or officers, or both, does not destroy their character as distinct entities; nor does similarity or identity in names make two corporations the same, particularly where they are incorporated in different states."); *see also Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) ("Courts have long presumed the institutional independence of related corporations, such as

---

[32] Pl.'s Resp. Sturdi Defs.' Mot. Dismiss 12, ECF No. 40.
[33] *See generally*, Pl.'s Resp. Sturdi Defs.' Mot. Dismiss 11–12, ECF No. 40.

parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts."); *Sims v. Sims (In re Sims)*, 994 F.2d 210, 217 (5th Cir. 1993) (applying the principle of corporate separateness in bankruptcy proceedings).

Sturdi I and Plaintiff are distinct corporate entities.[34] The Court "can find nothing in the statute that requires more 'separateness' than that." *Cedric Kushner Promotions*, 533 U.S. at 163. Because all of the alleged racketeering was directed at Sturdi I, and Studi I is a distinct entity from Plaintiff, the Court finds that the answer to whether the racketeering activity was directed against the corporation is yes. *Whalen*, 954 F.2d at 1090.

    2.  <u>Whether the alleged injury to the shareholders merely derived from, and thus was not distinct from, the injury to the corporation.</u>

Plaintiff's brief does not address the second question of whether the alleged injury to the shareholders merely derived from, and thus was not distinct from, the injury to the corporation so the Court presumes Plaintiff concedes the answer is yes. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023). Nevertheless, for the reasons already given, the Court finds that Plaintiff has not alleged an injury that is distinct from the injury to Sturdi I.

    3.  <u>Whether state law provides that the sole cause of action accrues in the corporation.</u>

Plaintiff concedes that generally under Texas law, a shareholder lacks standing to assert claims individually where the cause of action belongs to the company.[35] However, Plaintiff argues that it can recover damages because it has pleaded that Craig McAlpine violated a duty that he owed to Plaintiff.[36] *See Toth Enterprises II, P.A. v. Forage*, 707 F. Supp. 3d 697, 706 (W.D. Tex. 2023) (quoting *Saden v. Smith*, 415 S.W.3d 450, 463 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (cleaned up)). Relying on *Toth*, Plaintiff maintains that Craig McAlpine, as sales director

---

[34] *See* Am. Compl. ¶ 1, ECF No. 22.
[35] Pl.'s Resp. Sturdi Defs.' Mot. Dismiss 12, ECF No. 40.
[36] *Id.* at 13.

and officer of Sturdi I, owed a continuing fiduciary duty of care, loyalty, good faith, and candor to Plaintiff as Sturdi I's sole shareholder.[37]

The authority that Plaintiff cites is inapposite. In all of the cases Plaintiff relies on, and in the cases that those cases rely on, the plaintiffs and defendants were the sole members of a closely held LLC. *See e.g., Toth*, 707 F. Supp. 3d at 702, 707. And the courts in each of those cases found that the plaintiffs had a "unique and independent injury" from that of the LLC because the plaintiffs claimed that the defendants were dissipating and concealing the profits of the LLC to his benefit and to the plaintiff's detriment. *Id.* ("Like the defendants in *Saden* and *French*, Defendants Ellis, Forage, Allied Management, and Nichols used their status as members of an LLC to benefit themselves to the detriment of the other members . . . .").

Here, there is no such relationship between Plaintiff and the Sturdi Defendants. Plaintiff asserts that Craig's position as an officer of Sturdi I created duties and obligations between him and Plaintiff. But Plaintiff's complaint contains no factual allegations to support that assertion nor does Plaintiff cite any authority establishing such a relationship. And the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. Furthermore, unlike in *Toth*, there was no contractual relationship between Plaintiff and the Sturdi Defendants, and Plaintiff does not allege that it relied on any false statements made by the Sturdi Defendants.[38] Plaintiff has failed to allege an exception to the general Texas rule that "[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though [the stockholder] may be injured by that wrong." *Saden*, 415 S.W.3d at 463 (first alteration in original).

---

[37] *Id.* (quoting *Toth*, 707 F. Supp. 3d at 705 ("a shareholder may nevertheless recover damages for wrongs done to him individually when he pleads and proves that the defendant has violated a duty that he owed the shareholder.").

[38] To the extent Plaintiff alleges false statements were made, they were made by the Frost Defendants and not the McAplines. *See* Am. Compl. ¶¶ 48, 49, 51, 52, ECF No. 22.

The Court finds that each of the questions laid out in *Whalen* can be answered with a "yes" and therefore, Plaintiff does not have standing to bring either of its civil RICO claims. 954 F.2d at 1091.

### 4.  Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), a federal district court has supplemental subject-matter jurisdiction over specified state-law claims, which it may or may not choose to exercise. "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see also* § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" (emphasis added)); *see also Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claim remained after resolution of federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction.").

Here, the parties originally invoked this Court's jurisdiction under 28 U.S.C. § 1331 as Plaintiff pleaded claims arising out of 18 U.S.C. §§ 1961 *et seq.*[39] The Court has now disposed of all federal claims against the Sturdi Defendants. In light of the underlying state court litigation, the Court invokes its discretion under 28 U.S.C. § 1367(c) and declines to exercise jurisdiction over the state law claims of conversion, conspiracy to defraud, and accounting against the Sturdi Defendants.

### D.  Leave to Amend

Under Rule 15(a), a court should "freely give leave [to amend a complaint] when justice so requires." FED. R. CIV. P. 15(a)(2). "Nevertheless, a party must 'expressly request' leave to

---

[39] Am. Compl. ¶ 31, ECF No. 22.

amend." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 796 (5th Cir. 2014) (citing *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). "Although this request need not be contained in a formal motion, a bare request in opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Law*, 587 F. App'x at 796 (internal citation and quotation marks omitted). Plaintiff makes only a bare boned request seeking leave to amend and provides no indication of how it would cure the defects laid out above. Therefore, Plaintiff's RICO claims against the Sturdi Defendants are **DISMISSED with prejudice** and Plaintiff's state law claims of conversion, conspiracy to defraud, and accounting are **DISMISSED without prejudice**.

### E. Motion for Sanctions

Sturdi Defendants move for sanctions against Plaintiff arguing that Plaintiff violated Federal Rule of Civil Procedure 11. However, Sturdi Defendants concede that their Motion for Sanctions "is not identical to the Rule 11 motion they served on Chemcraft pursuant to Fed. R. Civ. P 11(c)(2) ('the safe harbor rule') and that Fifth Circuit precedent requires the Court to deny it on that basis."[40] Accordingly, Sturdi Defendants' Motion is **DENIED** without prejudice. *See Castro & Co., LLC v. Diamond Offshore Services Ltd.*, No. 3:18-CV-574-M, 2018 WL 6069973, at *3–*4 (N.D. Tex. Oct. 29, 2018), *report and recommendation adopted*, No. 3:18-CV-574-M, 2018 WL 6068977, at *1 (N.D. Tex. Nov. 20, 2018).

### IV.  CONCLUSION

For the forgoing reasons, Frost's Motions to Dismiss and Compel Arbitration (ECF Nos. 26, 27, 28) are **GRANTED**; Sturdi Defendants' Motion to Dismiss Due to Parallel Proceedings

---

[40] Sturdi Defs.' Reply Supp. Mot. Sanction 1, ECF No. 48 (citing *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 389 (5th Cir. 2022)).

(ECF No. 31) is **DENIED**; Sturdi Defendants' Motion to Dismiss (ECF No. 32) is **GRANTED** in part; and Sturdi Defendants' Motion for Sanctions (ECF No. 44) is **DENIED** without prejudice.

 **IT IS THEREFORE ORDERED** that Plaintiff's RICO claims under 18 U.S.C. § 1962(c), (d) against Sturdi Defendants are **DISMISSED with prejudice**. Plaintiff's state law claims against Sturdi Defendants are **DISMISSED without prejudice**.

 **IT IS FURTHER ORDERED** that Plaintiff submit its claims against Defendants Frost Bank, Frost Brokerage Services, Inc., Frost Investment Services, LLC, and Urbin McKeever to arbitration. All proceedings related to the parties ordered to arbitrate in this case are hereby **STAYED** pending the results of arbitration. The Clerk is **DIRECTED** to stay and administratively close this case pursuant to this Order. Furthermore, the arbitrating parties are **ORDERED** to provide regular status reports on this case every 90 days, beginning on, or before, **August 14, 2026**. Upon the conclusion of arbitration, the parties **SHALL** either (1) file a stipulation of dismissal or (2) file a motion to reopen this case.

 **SO ORDERED** on this **15th day** of **May, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**